

# Cullan & Cullan

Doctors of Medicine/Attorneys at Law

Old Market Cullan Court
1113 Harney Street
Omaha, Nebraska 68102
(402) 397-7600

January 11, 2008

Buster Brown, City Clerk
City of Omaha
1819 Farnam Street, Ste. LC-1
Omaha, NE 68183

  Re: Claim Pursuant to Neb.Rev.Stat. §13-905

Dear Mr. Brown:

  This letter is being filed with you pursuant to Neb. Rev. St. §13-905, in your capacity as the statutorily designated recipient of claims against the City of Omaha. The City's Web site also indicates that claims are to be filed with the Office of the City Clerk. A courtesy copy of this claim is being provided to City Attorney Paul Kratz, as well. The claim is being made pursuant to the Nebraska Political Subdivisions Tort Claims Act, Neb. Rev. St. §13-901, *et seq.*

  Although this letter is being filed with your office, a courtesy copy is being provided to City Attorney Paul Kratz.

### Claimants

  The claimants in this matter are Elizabeth Higgins and Shawn Simoens, as co-Personal Representatives of the Estate of Alexander T. Simoens, deceased, and Elizabeth Higgins and Shawn Simoens, individually, in their capacities as the daughter and son of, and sole heirs at law of, Alexander T. Simoens, deceased.

### Persons/Entities Against Whom Claim is Made

This claim is being made against the following entities and persons:

The City of Omaha
The Omaha Police Department
The Chief of Police
Councilman Jim Suttle
Councilman Frank Brown
Councilman Jim Vokal





PLAINTIFF'S EXHIBIT A

January 11, 2008
Page 2

      Councilman Garry Gernandt
      Councilman Dan Welch
      Councilman Franklin Thompson
      Councilman Chuck Sigerson, Jr.
      Thomas Warren
      City/Police Department Employees (current and former):
           Joachim Dankiw
           Jeanelle Moore
           Andrew Freeman
           Mark Haefele
           Charles Benak

     In addition, claims are being made against John and Jane Does 1-14, and John and Jane Does 15-25. John and Jane Does 1-14 are agents, servants or employees of the City and/or the Police Department, who were on duty at the City Jail between approximately 8:00 p.m. on Friday, September 7, 2007, and midnight, on Sunday, September 9, 2007. John and Jane Does 15-25 are agents, servants or employees of the City and/or the Police Department who had actual knowledge of the events giving rise to this claim, regardless of whether they were on or off duty during the above-described time frame. The real names of John and Jane Does 1-25 are presently unknown to Claimants.

### Basis of Claim: Time and Place

     The events giving rise to this claim started at the Omaha City Jail, 505 South 15th Street, Omaha, Nebraska 68102, on September 7, 2007, at approximately 8:00 p.m., when Alexander T. Simoens was brought to the jail for booking and intake processing on traffic-related charges. The claim-related events continued at the jail through approximately 11:00 p.m. to midnight on Sunday, September 9, 2007, or the time when Mr. Simoens was removed by ambulance from the jail. The claim-related events continued at Creighton Medical Center where Mr. Simoens was treated for injuries sustained at the jail, and ended at the Medical Center with Mr. Simoens' death on September 11, 2007. The precise time of each of the relevant events is presently unknown to Claimants, but the undersigned believes this data is sufficient to put the City on notice of the time and place pursuant to §13-905, so as to enable the City to investigate this claim.

### Basis of Claim: Claim Events Summary

     Mr. Simoens was stopped by Omaha police officers and charged with traffic violations on September 7, 2007. He was transported to the jail for booking and intake processing. It is believed that at or near the time of his admission to the jail, he advised one or more City personnel on duty at the jail of his need for medication which he did not have with him. At a time presently unknown, but believed to be late at night on September 7th, or in the early morning hours of September 8, 2007, Mr. Simoens' physical condition began to deteriorate. Over the course of time between his booking and late afternoon or early evening on September 9th, Mr. Simoens repeatedly told City personnel that he needed medical attention and needed medication. All requests by Mr. Simoens for medical help were deliberately ignored. Other detainees at the jail observed Mr. Simoens' failing condition and also advised City

January 11, 2008
Page 3

personnel of Mr. Simoens' need for medical attention. That information was deliberately ignored as well.

Over the course of his detention, Mr. Simoens experienced multiple incidents of vomiting, which began with gastric juices and bile, and presumably his stomach contents at the time of the first vomiting incident, and continued to include incidents of vomiting frank blood and ultimately vomiting hemorrhagic blood, and eventually led to his collapse in his cell late in the afternoon, or early in the evening, on September 9th. Multiple City personnel were aware of the vomiting incidents, including but not limited to the person(s) who had to clean up Mr. Simoens' cell after each vomiting incident. No one on duty at the jail did anything to assist Mr. Simoens or to provide him with prompt medical attention.

During Mr. Simoens' detention, as his condition worsened, he was subjected to verbal and physical abuse. At one point a milk carton was thrown at Mr. Simoens and he was told to spit his blood into the container. At another point he was removed to an isolated cell, and the door closed in such a manner as to muffle the sounds of his vomiting and/or his ongoing pleas for medical help. At another point, when he told a City employee that he thought he was going to die, the response was "Go ahead, lay down and fucking die."

Following the discovery of Mr. Simoens' collapse, a paramedic or other medical assistance was finally provided to Mr. Simoens, although Claimants and the undersigned have no present knowledge of the length of time between the discovery of his collapse and the arrival of the medical assistance, or of the length of time it took to get an ambulance and transport him to Creighton Medical Center. Medical treatment was provided to Mr. Simoens at the Medical Center, but he died on September 11, 2007, with members of his family at his bedside.

But for the outrageous indifference of City personnel to Mr. Simoens' blatantly obvious medical condition, which became progressively more dire over the course of his detention, Mr. Simoens would have survived.

## Damages

During the course of the approximate three days at the jail, and continuing through September 11, 2007, Mr. Simoens experienced extreme physical, mental and emotional pain, suffering, distress and anguish. Additionally, during his detention time in the jail, Mr. Simoens' suffering, his physical, emotional and mental anguish while he was gradually bleeding to death, and while his plight was being intentionally and/or negligently ignored by City jail personnel, can only be said to have been as the result of the functional equivalent of torture. Mr. Simoens died on September 11, 2007.

## Demand

Pursuant to Neb. Rev. St. §§ 13-922 and 13-926, Claimants demand $5,000,000.

January 11, 2008
Page 4

### Medical Bills and Receipts

The procedures posted at the City's Web site for filing a claim against the City purport to "require" a claimant to provide medical bills and receipts at the time the claim is filed, implicitly as part of the claim. The statutes which govern the content of a claim against the City for personal injury and death impose no such obligation. However, if the City wishes to discuss or negotiate a resolution of this claim, Claimants and their counsel are of course willing to cooperate in such a process.

### Summary and Caveat

The aggregate conduct of the persons named above: (a) created a work environment at the City jail where it was not only permissible to ignore, or to delay providing treatment for, the medical needs of detainees, but doing so was a matter of routine, and (b) caused Mr. Simoens to suffer extreme pain and suffering before his death. The above-described conduct is so shocking to the conscience of any reasonable person, that were it not for the ban in the Nebraska Constitution on punitive damages for state law causes of action, a trial judge hearing a suit based on these events would without question award such damages.

The caveat, of course, is the obvious one that the purpose of §13-905 is to notify the City of an event or series of events giving rise to potential tort liability so that the City may investigate and determine whether to settle the claim without litigation. Nothing in the Act requires a claimant to absolutely establish the City's liability in the notice, and nothing in the Act permits the notice to in any way limit the theories of recovery possible against the City as a result of these events, including but not limited to any wrongful death or survival action, if the City declines to settle within the six-month time frame provided by law. Claimants and their counsel retain the right to file any and all claims and utilize any and all theories of recovery allowed by Nebraska law if a suit is filed arising out of the events of September 7-11, 2007.

Sincerely,

Joseph Cullan M.D. J.D.

Cc: Paul Kratz, City Attorney